Receipt #067312

ORIGINAL

FILED
NOV 1 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Precision Lift, Inc.**
**130 South Oak Points Drive**
**Seneca, SC 29672**

**Plaintiff**

**v.**

**The United States**

**Defendant**

**No.** 07-762 C

**COMPLAINT**

1. Plaintiff is Precision Lift, Inc. ("PLI" or "Plaintiff"), 130 South Oak Points Drive, Seneca, SC 29672.

2. Defendant is the United States of America acting though the Department of the Army.

**JURISDICTION**

3. Jurisdiction for this action is founded upon 28 U.S.C. § 1491(b)(1), in that this is an action, filed after the award of the contract, challenging said award, as is more fully set forth infra.

**III. BACKGROUND**

4. PLI has been in operation since May of 1990; it was originally incorporated in the State of Virginia, the Virginia Corporation was dissolved and PLI was then incorporated in the State of Montana in 1999.

5. Since October, 2005, John Tollenaere, PLI's President been the sole stockholder, and through him PLI has been certified by SBA as a Viet Nam

Era Service Disabled Veteran-Owned Small Business ("SDVBO"); PLI is also a SBA certified HUBZone Small Business Concern..

6. In 2001 PLI began working with a Canadian company, West Coast Weld Tech, Inc. ("WCWTI"), which was a manufacturer of helicopter maintenance platforms.

7. In 1998, PLI had been awarded a General Service Administration ("GSA") Federal Supply Schedule ("FSS") contract for Heli-Baskets, i.e., Contract No GS-07F-9893H; in 2001, as a result of PLI's new relationship with WCWTI, helicopter maintenance platforms were added to PLI's GSA FSS contract.

8. Because GSA contracts contain a NAFTA clause (FAR 52.225-21 or 52.225-21), the contractor is permitted to supply Canadian manufactured products, as if they were domestic.

9. Subsequently, PLI and WCWTI discussed the establishment of an American manufacturing facility, so as to be able to compete for maintenance platform contracts outside of PLI's FSS contract (i.e., contracts without the NAFTA clause).

10. As a result, in 2005 WCWTI established West Coast Weld Tech International ("WCWT Int'l") at 4101 North Star Blvd., Great Falls, Montana.

11. In November of 2006, PLI became aware of a procurement being conducted by U.S. Army Aviation and Missile Command ("AMCOM"); the procurement, a small business set-aside, contemplated a FIVE (5) YEAR Indefinite Delivery-Indefinite Quality ("IDIQ") contract for maintenance platforms for various helicopters.

12. The FedBizOps announcement established a size standard of 1,000 employees and cautioned that participation in the procurement was limited to

"U.S. Small Businesses;" under the NAICS code/size standard (i.e., 1,000 employees), PLI qualifies as a small business.

13. Solicitation W58RGZ-07-R-0266 ("the Solicitation") was then issued by AMCOM on January 25, 2007.

14. The Solicitation included the clause at FAR 52.219-6, Notice of Total Small Business Set-Aside; that clause requires that if the offeror is not the manufacturer of the items being purchased by the Government, the offeror agrees to supply only items produced by a small business located in the U.S.

15. PLI submitted its offer in response to the Solicitation by letter dated February 28, 2007.

16. By letter dated March 15, 2007 the AMCOM contracting officer advised PLI that its proposal had been found to be "technically unacceptable" for various reasons.

17. By letter dated March 23, 2007, PLI responded to AMCOM's March 15 letter, providing the requested information.

18. PLI's letter responded to a question in AMCOM's letter, and indicated PLI intended to subcontract the manufacture of the platforms to "West Coast Weld Tech;" the letter did not differentiate between West Coast Weld Tech, Inc. and West Coast Weld Tech International, Inc., but PLI's intent was for the manufacturing operation to be conducted at the WCWCT Int'l facility in Montana (since that was the reason it had been established).

19. This intent was confirmed in PLI's letter of April 19, 2007 to WCWTI in response to the April 18, 2007 WCWTI Annual Report; it expressed PLI's understanding that any maintenance platforms manufactured by WCWTI for PLI would be manufactured in Montana.

20. By letter dated May 1, 2007, AMCOM informed PLI that its proposal was now considered "technically acceptable;" PLI was also asked to confirm that its platforms would be manufactured in the United States, since according to the AMCOM letter PLI "is teaming with West Coast Weld (sic) which is a Canadian Company."

21. By letter dated May 4, 2007, PLI responded to AMCOM's May 1 letter and verified that all end-products it would supply under a contract arising from the Solicitation would be "manufactured domestically."

22. At PLI's request, WCWTI later confirmed that all manufacturing operations would be performed at its WCWT Int'l facility in Montana; it also provided a report on the status of the Montana facility to perform the necessary manufacturing operations.

23. In late July/early August, a DCMA Team visited the WCWT Int'l facility to perform a Pre-Award Survey in order to verify that the platforms required under a contract arising from the Solicitation could be manufactured at the WCWT Int'l facility; as part of that review, PLI provided a three-ring binder of documentation on itself and a WCWTI binder, outlining the company history and its plan for all the manufacturing operations required to produce the maintenance platforms to be conducted in its U.S. facility.

24. PLI has not seen a copy of the Pre-Award Survey, but we understand that the DCMA team verified that the contract, if awarded to PLI, could be performed at the WCWT, Int'l facility in Montana.

25. By letter dated September 11, 2007, PLI was informed by AMCOM that it was ineligible for a contract award due, according to AMCOM, to a decision by

SBA concerning WCWTI (i.e., that the platforms would be manufactured in Canada).

26. PLI had become aware during the Summer of a size challenge against the apparent winner, Fernandez Enterprises, LLC ("Fernandez"); that challenge resulted in a decision by SBA that the Fernandez proposal contemplated manufacturing of the platforms at WCWTI's Canadian facility and thus it was ineligible for award under the 52.219-6 clause; that decision was later affirmed by the SBA office of Hearings and Appeals ("OHA").

27. While PLI had heard that there had been a size challenge against the Fernandez offer, PLI did not receive notice from SBA of the challenge and did not participate in the SBA proceedings.

28. In response to AMCOM's September 11 letter, PLI's counsel filed an Agency Protest contending that the issue of whether PLI's proposal was eligible for award was exclusively committed to SBA and that the OHA decision did not rule that the Montana facility was not a manufacturer; rather it ruled that it was not the manufacturer identified in the Fernandez proposal, which clearly showed Fernandez's intent to manufacture the platforms in Canada; the Agency Protest went on to explain that PLI's proposal, as confirmed by the DFAS Pre-Award Survey team, contemplated manufacture of the platforms in Montana and that the platforms could, in fact be manufactured in Montana.

29. PLI believes that AMCOM then notified unsuccessful offerors that PLI was the proposed awardee; that apparently prompted the instant size protest by Spika Welding and Manufacturing, Inc. ("Spika").

30. Spika's protest, for the most part, parroted the OHA decision; however that decision, as is noted above, was based on a review of the proposal submitted by Fernandez showing that its platforms would be manufactured in Canada.

31. PLI responded to the Spika Protest by providing SBA with a Declaration Under Penalty Of Perjury signed by Mr. Tollenaere in which he reiterated PLI's commitment to produce the platforms at the Montana facility.

32. On October 18 at about 1:50 P.M., PLI received an e-mail from SBA requesting certain additional information; the e-mail requested the information by close of business that day.

33. PLI responded by October 19, providing the information requested and answering the questions in the previous day's e-mail.

34. On October 24, 2007 the SBA Atlanta Area Office ruled that PLI was ineligible for the award under the Solicitation, because in sum and substance, PLI could not show that manufacturing of the platforms was actually taking place at the Montana facility on the date of PLI's Final Offer to AMCOM, and that there was, according to the SBA decision, a "risk" that the platforms required under a contract resulting from the Solicitation "could" be manufactured in Canada.

35. PLI has appealed the Area Office decision to the SBA Office of Hearings and Appeals ("OHA"), challenging the decision by the Atlanta Area Office; PLI's Size Appeal has cited a number of factual errors and erroneous conclusions in the Area Office's determination.

36. The OHA, however has a policy that where, as here, the size determination was contract specific (i.e., only applicable to the particular procurement), if the contract has been awarded any size appeal will be dismissed as moot,

meaning PLI will be denied the opportunity to overturn the Size Determination and receive the contract award.

37. Loss of the contract opportunity in the event its Size Appeal is rendered moot will cause PLI irreparable harm, since its only remedy would then be bid preparation costs (i.e., no lost profits).

## IV. CLAIMS

### Count I
### Declaratory Relief

38. Plaintiff hereby incorporates paragraphs 1-34 of this Complaint as if set forth in full.

**WHEREFORE**, Plaintiff Precision Lift, Inc. respectfully requests that the Count declare that award by AMCOM of a contract arising out of the Solicitation prior to the SBA OHA's decision on PLI's Size Appeal would be arbitrary and capricious and lacking rational basis.

### Count II
### Injunctive Relief

39. Plaintiff hereby incorporates paragraphs 1-34 of this Complaint as if set forth in full.

**WHEREFORE**, Plaintiff Precision Lift, Inc. respectfully requests that the Court enjoin award of a contract arising from the Solicitation, until the SBA OHA rules on PLI's Size Appeal.

Respectfully submitted,

MARC LAMER
Attorney for Plaintiff
Precision Lift, Inc.

Kostos and Lamer, P.C.
1608 Walnut Street, Suite 1300
Philadelphia, PA 19103
(215) 545-0570

Dated: October 31, 2007